UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE BRANDON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No. CV 17-7420-KK<br><br><br>MEMORANDUM AND ORDER |

Plaintiff Michelle Brandon ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying her applications for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income Benefits ("SSI"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

**I.**

**PROCEDURAL HISTORY**

On August 9, 2011, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of January 15, 2011. Administrative Record ("AR") at 118-47.

Plaintiff's applications were denied initially on November 17, 2011 and upon reconsideration on May 29, 2012. Id. at 36-55.

Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 65. On March 14, 2013, Plaintiff appeared without representation and testified at a hearing before the assigned ALJ. Id. at 20-35. On April 8, 2013, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI. Id. at 5-15.

Plaintiff filed a request for the Agency's Appeals Council to review the ALJ's April 8, 2013 decision. Id. at 4. On May 27, 2014, the Appeals Council denied Plaintiff's request for review. Id. at 1-3.

Plaintiff filed an appeal of the Agency's decision in the United States District Court for the Southern District of New York, which resulted in the parties stipulating to remand the action to the Agency for further consideration of Plaintiff's applications. Id. at 362-65.

On January 26, 2016, Plaintiff appeared with counsel and testified at a second hearing before the assigned ALJ. Id. at 332-61. On March 9, 2016, the ALJ issued a decision again denying Plaintiff's applications for DIB and SSI. Id. at 314-26.

Plaintiff filed a request for the Agency's Appeals Council to review the ALJ's March 9, 2016 decision. Id. at 306. On March 29, 2017, the Appeals Council denied Plaintiff's request for review. Id. at 292-93.

On September 25, 2017, Plaintiff, proceeding pro se, filed the instant action. ECF Docket No. ("Dkt.") 1, Compl.[1] This matter is before the Court on the

---

[1] Plaintiff originally filed this action in the United States District Court for the Southern District of New York, where the underlying Agency proceedings had taken place. Compl. On September 29, 2017, the court transferred the action to this Court because Plaintiff now resides within the Central District of California. Dkt. 4.

Parties' cross-motions for summary judgment filed by Plaintiff on April 20, 2018, and Defendant on May 23, 2018. Dkts. 19, 23.

## II.

## **PLAINTIFF'S BACKGROUND**

Plaintiff was born on November 16, 1977, and her alleged disability onset date is January 15, 2011. AR at 118, 142, 335. She was 33 years old on the alleged disability onset date, 35 years old at the time of the first hearing before the ALJ, and 38 years old at the time of the second hearing before the ALJ. Id. at 34, 36, 44, 335. Plaintiff has a high school education. Id. at 42, 50, 336. Plaintiff alleges disability based on anxiety, panic attacks, and depression. Id. at 119, 145, 335.

## III.

## **STANDARD FOR EVALUATING DISABILITY**

To qualify for benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

1. Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
2. Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

3. Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.[2]

4. Is the claimant capable of performing work she has done in the past? If so, the claimant is found not disabled. If not, proceed to step five.

5. Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

See Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## IV.
## **THE ALJ'S DECISION**

**A.　STEP ONE**

At step one, the ALJ found Plaintiff "has not engaged in substantial gainful activity since January 15, 2011, the alleged onset date." AR at 319.

---

[2] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]," or ability to work after accounting for her verifiable impairments. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

## B. STEP TWO

At step two, the ALJ found Plaintiff "has the following severe impairments: an anxiety disorder with panic attacks and a major depressive disorder." Id.

## C. STEP THREE

At step three, the ALJ found Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Id. at 320.

## D. RFC DETERMINATION

The ALJ found Plaintiff had the following RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can remember, understand, and carry out only simple instructions and she cannot tolerate more than occasional interaction with the public. She can respond appropriately to supervision, coworkers, and usual work situations, and she can deal with changes in a routine work setting.

Id. at 321.

## E. STEP FOUR

At step four, the ALJ found Plaintiff "has no past relevant work." Id. at 324.

## F. STEP FIVE

At step five, the ALJ found "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Id. at 325.

## V.
## PLAINTIFF'S CLAIMS

Plaintiff presents one disputed issue: whether the ALJ properly considered the medical evidence of record, particularly the opinions of Plaintiff's licensed clinical social worker and the examining psychologist, in analyzing Plaintiff's mental impairments and her residual functional capacity.

# VI.
# **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

"Substantial evidence" is evidence that a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick, 157 F.3d at 720 (citation omitted); see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (stating that a reviewing court "may not affirm simply by isolating a 'specific quantum of supporting evidence'") (citation omitted). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

The Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). If the ALJ erred, the error may only be considered harmless if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." Robbins, 466 F.3d at 885 (citation omitted).

# VII.

# DISCUSSION

# THE ALJ FAILED TO PROPERLY ADDRESS THE OPINION OF THE EXAMINING PSYCHOLOGIST

**A. Relevant Facts**

On November 9, 2015, Plaintiff underwent a psychiatric evaluation[3] by consultative psychologist Michael Kushner, Ph.D. AR at 465-72. Dr. Kushner reported that Plaintiff was "mostly" well-groomed and had a depressed affect and dysthymic mood. Id. at 466. Plaintiff exhibited an impaired remote memory, her intellectual functioning was below average, and her general fund of information was "somewhat limited." Id. at 467. Dr. Kushner diagnosed Plaintiff with an unspecified depressive disorder and panic disorder. Id.

Based on his evaluation and diagnosis, Dr. Kushner concluded Plaintiff was mildly limited in her ability to understand simple directions and instructions, perform simple tasks independently, and make judgments on simple work-related decisions. Id. at 467, 469. Dr. Kushner found Plaintiff had mild to moderate limitations in her ability to make appropriate decisions. Id. Finally, Dr. Kushner concluded Plaintiff had moderate to marked limitations in her ability to maintain attention, concentration, and a regular schedule; perform complex tasks under supervision; relate adequately with others, including the public, supervisors, and coworkers; and appropriately deal with stress such as usual work situations and changes in a routine work setting. Id. at 467, 470.

In his opinion denying Plaintiff's applications, the ALJ gave "[s]ome weight . . . to the limitations noted by Dr. Kushner but his opinion regarding marked limitations at times appears exaggerated in light of the treatment records and GAF scores." Id. at 324.

---

[3] The Court notes Dr. Kushner referred to the examination as a psychiatric evaluation, although he is a doctor of psychology.

7

B.   **APPLICABLE LAW**

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citation and internal quotation marks omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Ryan v. Comm'r Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014); Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her or] his interpretation thereof, and making findings." Reddick, 157 F.3d at 725. The ALJ "must set forth [her or] his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

C.   **ANALYSIS**

As a preliminary matter, it is arguable Dr. Kushner's opinion was uncontradicted by the other medical opinions of record. Plaintiff has a well-documented history of severe depression, anxiety, and panic attacks. AR at 204, 217-22, 234-38, 456-57, 460, 488-96, 502-53, 546-642. Moreover, Dr. Kushner's opinion is the only evidence in the record relating Plaintiff's mental illness to her ability to perform work activity. If uncontradicted, the ALJ could have rejected the doctor's opinion only after providing "clear and convincing reasons." Carmickle, 533 F.3d at 1164; Widmark, 454 F.3d at 1066. Nonetheless, even assuming Dr.

Kushner's opinion was contradicted by other medical evidence in the record, such as occasional higher GAF scores, AR at 523, 539, 543, 621, 635, 642, the ALJ could have rejected the doctor's opinion only after providing "specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Ryan, 528 F.3d at 1198; Ghanim, 763 F.3d at 1160-61; Garrison, 759 F.3d at 1012. Here, as set forth below, the ALJ failed to provide sufficient reasons for rejecting Dr. Kushner's opinion.

First, the ALJ concluded Dr. Kushner's opinion was exaggerated in light of the treatment record. AR at 324. However, the treatment record establishes Plaintiff's lengthy and sustained battle with mental illness. Plaintiff first began receiving treatment in January 2011. Id. at 234-40. Plaintiff's treatment has included long-term medication use and multiple emergency room visits for panic attacks. Id. at 204, 217-22, 234-38, 456-57, 460, 488-96, 502-53, 546-642. Plaintiff reported some improvement with medications, but continued to be depressed, isolated herself, and experienced almost daily panic attacks. Id. at 502, 505-06, 508, 511, 514-15, 538-39, 575, 581, 585, 595, 598, 604-05, 607, 610, 630-31, 634. Moreover, as the ALJ noted, the record shows Plaintiff sometimes discontinued treatment or failed to comply with prescribed treatment that might have alleviated some of her symptoms. See id. at 260-64, 321, 322, 324, 459, 488, 511, 518, 522, 546, 613, 616, 620. Notably, however, this failure to comply with treatment regimens is not unusual in the mental health context and does not contradict the evidence of impairment. Cf. Garcia v. Astrue, No. C10-5463-RBL-JRC, 2011 WL 884126, at *18 (W.D. Wash. Feb. 15, 2011), report and recommendation adopted, 2011 WL 888114 (W.D. Wash. Mar. 14, 2011) ("When mental illness is involved, assuming that a failure to comply with prescribed treatment suggests a *willful* failure to comply with prescribed treatment can be illogical. This is in part because a person suffering from a mental illness may not realize that he needs his

medication, or he may not realize even that his 'condition reflects a potentially serious mental illness.'" (quoting Van Ngyuen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996))). This is particularly true for Plaintiff who has a documented history of avoiding appointments because she found it difficult to communicate about her problems. See, e.g., AR at 526, 601-02, 624. Thus, contrary to the ALJ's conclusion, the treatment record does not contradict Dr. Kushner's opinion regarding Plaintiff's impairments.

Second, the ALJ suggested Dr. Kushner's opinion was exaggerated in light of Plaintiff's global assessment of functioning ("GAF") scores of record.[4] AR at 324. Curiously, the ALJ acknowledges that GAF scores "indicate only a snapshot assessment of current functioning and they are not particularly probative of the issue of the claimant's overall long-term functioning." Id. at 324. Despite this, the ALJ then relies heavily on the alleged probative value of Plaintiff's GAF scores to reject Dr. Kushner's finding of marked impairments. Id. at 324. Moreover, when viewed as a whole, the GAF scores do not undermine Dr. Kushner's assessment. While some treatment providers indicated Plaintiff's GAF score was as high as 65-

---

[4] The Ninth Circuit has discussed the relevance of GAF scores as follows:
> "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir, 1998). . . . Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement. We note, however, that GAF scores are typically assessed in controlled, clinical settings that may differ from work environments in important respects. See, e.g., Titles II & XVI: Capability to Do Other Work – Themedical – Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments, SSR 85-15, 1983-1991 Soc. Sec. Rep. Serv. 343 (S.S.A. 1985) ("The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day.").

Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014).

10

70[5] at times, id. at 523, 539, 543, 621, 635, 642, at other times, Plaintiff's GAF score was reported to be as low as 34 and 47[6], id. at 493, 495. Most often providers found Plaintiff's GAF score to be between 50-55[7], which is indicative of significant impairment. Id. at 509, 512, 515, 546, 552, 572, 583, 587, 591, 611, 614. Thus, contrary to the ALJ's conclusion, Plaintiff's GAF scores do not contradict Dr. Kushner's opinion regarding Plaintiff's impairments.

Accordingly, the ALJ erred by failing to provide specific and legitimate reasons that are supported by substantial evidence in the record for rejecting Dr. Kushner's opinions.

## VIII.
## **RELIEF**

### A. APPLICABLE LAW

"When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012) (citation omitted). "We may exercise our discretion and direct an award of benefits where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed." Id. (citation omitted). "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it

---

[5] A GAF of 65-70 indicates "[s]ome mood symptoms" or "some difficulty in social, occupational, or school functioning . . . , but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 34.

[6] A GAF score in the range of 31 to 40 indicates "some impairment in reality testing or communication," or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." DSM-IV at 34. A GAF score between 41 and 50 describes "serious symptoms" or "any serious impairment in social, occupational, or school functioning." Id.

[7] Again, a GAF score of 50 indicates a "serious impairment in social, occupational, or school functioning." DSM-IV at 34. A GAF score between 51 and 60 describes "moderate symptoms" or "any moderate difficulty in social, occupational, or school functioning." Id.

11

is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." Id. (citations omitted); see also Reddick, 157 F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.").

**B.    ANALYSIS**

In this case, the record has not been fully developed. The ALJ must reassess the evidence and provide sufficient reasons supported by the record for rejecting Dr. Kushner's opinion, if the ALJ again finds the opinion should be rejected. Accordingly, remand for further proceedings is appropriate.

## IX.
## CONCLUSION

For the foregoing reasons, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this action for further proceedings consistent with this Order. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

Dated: June 5, 2018

/s/ Kenly

HONORABLE KENLY KIYA KATO
United States Magistrate Judge